UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and HOWARD McDOUGALL, as Trustee, <br><br> Plaintiffs, <br> v. <br><br> C. & V. LEASING, INC., a Michigan corporation, <br><br> Defendant. | Case No. 09 C 2871 <br><br> Judge Joan B. Gottschall |

**MEMORANDUM OPINION & ORDER**

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund (the "Fund") and Howard McDougall, a trustee of the Fund (collectively, "Central States"), brought this action pursuant to the Employee Retirement Income Security Act ("ERISA") as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381-1461, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, requesting: an injunction against arbitration between Central States and defendant C. & V. Leasing, Inc. ("C&V"); a declaration that C&V's initiation of arbitration was untimely; and, regardless of whether C&V's initiation of arbitration was untimely, a judgment against C&V related to liability payments that C&V allegedly owes to Central States. (Doc. 1.) This case is presently before the court on Central States' motion for summary judgment. (Doc. 20.)

# I. FACTUAL BACKGROUND[1]

The various issues regarding C&V's additional facts are resolved below, and the court considers here the undisputed facts of this case.

## A. Undisputed Facts

The Fund is a non-profit, multiemployer pension fund, and McDougall is its trustee. (Pls.' Stmt. ¶¶ 3-4.) C&V is a Michigan corporation that was required to contribute to the Fund on behalf of its employees pursuant to certain collective bargaining agreements. (*Id.* ¶ 6.) On December 29, 2007, C&V effected a "complete withdrawal" from the Fund, as that term is defined in 29 U.S.C. § 1383. (*Id.* ¶ 7.) Central States claimed that, as a result of the withdrawal, C&V incurred liability to the fund in the amount of $1,653,035.15. (*Id.* ¶ 8.)

On July 21, 2008, C&V received a Notice and Demand for payment of the withdrawal liability. (*Id.* ¶ 9.) The Notice and Demand informed C&V that it was required to pay its withdrawal liability in a lump sum or in monthly payments of $23,574.94, to commence August 1, 2008. (*Id.* ¶ 10.) On October 14, 2008, C&V, through counsel, requested that the Fund review its withdrawal liability. (Pls.' Stmt. ¶ 11.) The Fund responded to the request for a review, reaffirming C&V's liability in a letter dated January 22, 2009 that was received by C&V's counsel Paul Robinson of Sullivan & Leavitt on January 23, 2009. (*Id.* ¶ 12; *see also* Pls.' Ex. C Ex. 3.)

C&V made monthly payments according to the Fund's suggested schedule through February 2009. (Pls.' Stmt. ¶¶ 18-20.) After February 2009, C&V stopped

---

[1] Citations to the record proceed as follows. "Pls.' Stmt" refers to Plaintiffs' L.R. 56.1(a)(3) Statement of Material Facts (Doc. 21), while "Pls.' Ex." refers to exhibits attached thereto. "Def.'s Stmt." refers to C&V's Statement of Additional Facts Pursuant to L.R. 56.1(b)(3)(C) (Doc. 23 at 6-7), while "Def.'s Ex." refers to the document attached thereto. "Pls.' Reply Ex." refers to documents submitted by plaintiffs with their response to C&V's Statement of Additional Facts.

2

making payments and, on March 17, 2009, received a past-due notice from Central States regarding its withdrawal liability payments. (*Id.* ¶ 21.) On March 25, 2009, C&V faxed an arbitration demand to the American Arbitration Association (the "AAA") regarding the withdrawal liability. (*Id.* ¶¶ 13-14.) The Fund received notice of the arbitration demand not from C&V, but rather from the AAA, on April 2, 2009. (*Id.* ¶¶ 16-17; *see also* Pls.' Ex. C ¶ 20.) On April 9, 2009, the Fund wrote to the AAA and C&V's counsel to object to the timeliness of C&V's arbitration demand. (Pls.' Reply Ex. A ¶¶ 4-5.) At some point in the next month, the Fund voluntarily participated in the selection of an arbitrator. (Def.'s Stmt. ¶¶ 6, 8.)

On May 11, 2009, Central States filed this suit. (*See* Doc. 1.)

**B.     C&V's Additional Facts**

Before proceeding to the analysis of this case, the court addresses several of C&V's statements of facts to which Central States has objected. The court properly considers only admissible evidence at summary judgment. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). Statements of fact unsupported by citation to the record do not constitute admissible evidence, and therefore are not properly considered at summary judgment. *See Heft v. Moore*, 351 F.3d 278, 283 (7th Cir. 2003) ("Although we must draw all reasonable inferences in favor of [the non-movant], summary judgment is proper" when non-movant opposes motion with "factually unsupported claims."); *Curtis v. Wilks*, No. 08 C 3527, --- F. Supp. 2d ----, 2010 WL 1292481, at *17 (N.D. Ill. Mar. 29, 2010) (holding that plaintiffs failed to create a triable issue where "they offer no evidence to support" factual assertion); *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000) ("Factual allegations not properly supported by citation to the record are nullities.").

In support of its statement of additional facts, C&V offers just one piece of evidence, a one-page letter from C&V's counsel to Central States that, Central States objects, is not authenticated. Unauthenticated documents are not properly considered as evidence at summary judgment. *Rosemary B. on Behalf of Michael B. v. Bd. of Educ. of Community High Sch. Dist. No. 155*, 52 F.3d 156, 159 (7th Cir. 1995); *Williams v. Liberty*, 461 F.2d 325, 328 (7th Cir. 1972). Accordingly, the court declines to consider C&V's exhibit offered in support of its first additional fact. C&V's first additional fact lacks any further support, and so the court does not credit it.

C&V offers seven more facts, each of which lacks a citation to any evidence. (*See* Def.'s Stmt. ¶¶ 2-8.) Moreover, the entirety of the record submitted by C&V consists only of the unauthenticated letter discussed above. The letter provides no support for C&V's remaining seven additional facts, leaving these additional facts without any evidentiary basis. Therefore, the court does not credit C&V's additional facts 2, 3, 4, and 5. *Wilks*, 2010 WL 1292481, at *17.[2] C&V's additional facts 6, 7, and 8 are not supported by evidence, either; however, Central States does not dispute certain aspects of these facts. Thus, the court credits them only insofar as conceded by Central States.

Finally, C&V offers additional factual assertions in briefing that it did not raise in its statement of additional facts and does not support by citation to the record. (*See* Doc. 24 at 2-3.) These facts are stricken because they are unsupported by citation to any

---

[2] Even if the court were to credit C&V's additional facts, they would be immaterial. The statements of fact largely concern the timing of C&V's counsel's receipt of Central States' January 22, 2009 letter. That receipt began the running of the time for C&V to file a notice of demand for arbitration. While C&V appears to proffer these additional facts in an attempt to prove that C&V's arbitration demand was in fact timely, C&V does not make such an argument in briefing. Indeed, C&V waives the argument of the timeliness of its initiation of arbitration by identifying the "sole question" for the court to resolve as whether Central States "has waived any objection it could raise to the timeliness of C&V's filing of notice of arbitration" by allegedly proceeding with the arbitration without timely objection. (Doc. 24 at 4.)

4

evidence, and because they were not stated in a separate statement of facts, as required by local rule. *Curtis*, 2010 WL 1292481, at *17; *see also* L.R. 56.1. In any case, the facts that C&V offers for the first time in briefing are immaterial. They concern the basis for the Fund's assessment of C&V's withdrawal from the Fund, which is not at issue in this litigation. (Doc. 24 at 4.), and which C&V does not support by argument or reference to legal authority.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is warranted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see also Brengettcy v. Horton*, 423 F.3d 674, 680 (7th Cir. 2005). All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the non-moving party. *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008).

### B. MPPAA

"The MPPAA was prompted by Congress' fear that as individual employers withdrew from joint plans without providing funds to cover their workers' accrued benefits, a plan could be underfunded by the time the workers retired and their benefits came due." *Cent. States, Se. & Sw. Areas Pension Fund v. Nitehawk Express, Inc.* (*Nitehawk*), 223 F.3d 483, 485-86 (7th Cir. 2000); *see also Cent. States, Se. & Sw. Areas Pension Fund v. Midwest Motor Express* (*Midwest*), 181 F.3d 799, 803 (7th Cir. 1999). To allow a multiemployer plan to remain fully funded, the MPPAA requires that a withdrawing employer pay withdrawal liability "in an amount roughly equal to its

proportionate share of the plan's unfunded vested benefits." *Nitehawk*, 223 F.3d at 486; *Midwest*, 181 F.3d at 803.

The MPPAA also allows for the plan's collection of withdrawal liability and provides procedures for resolution of disputes that arise. When an employer withdraws from a multiemployer plan, the plan sponsor must: determine the amount of the employer's withdrawal liability; notify the employer of that amount and the schedule for payment of the liability; demand payment in accordance with the schedule; and collect the amount of withdrawal liability. 29 U.S.C. §§ 1382 & 1399(b)(1). After receiving notice of withdrawal liability and demand for payment, the employer has ninety days to request that the plan sponsor review the withdrawal liability, after which the plan sponsor must notify the employer of its decision on the employer's request for review and the basis for its decision. *Id.* § 1399(b)(2)(A) & (B).

The MPPAA requires disputes regarding withdrawal liability to be resolved through arbitration. *Id.* § 1401(a)(1). Any such arbitration must be initiated within 180 days of the employer's request for review of its withdrawal liability or 60 days of the employee's receipt of the plan sponsor's decision on the employer's request, whichever is earlier. *Id.* "A party that unilaterally initiates arbitration is responsible for establishing that the notice of initiation of arbitration was timely received by the other party." 29 C.F.R. § 4221.3(c).

Even while a dispute over withdrawal liability is pending, the MPPAA requires the employer to make scheduled payments. For example, the employer must begin making payments according to the schedule set forth by the plan sponsor no later than sixty days after it receives the demand with the schedule, even if the employer requests

the sponsor to review its notice and demand. 29 U.S.C. § 1399(b)(2); *see also Cent. States, Se. & Sw. Areas Pension Fund v. Schilli Corp.*, 420 F.3d 663, 667 (7th Cir. 2005). Moreover, an employer that demands arbitration nevertheless must make payments in accordance with the plan sponsor's determination of the employer's withdrawal liability until the arbitrator issues his final decision. 29 U.S.C. § 1401(d). The Seventh Circuit has referred to the MPPAA's payment scheme as "pay now, dispute later." *See Cent. States, Se. & Sw. Areas Pension Fund v. Bomar Nat'l, Inc.*, 253 F.3d 1011, 1015, 1016 (7th Cir. 2001).

If the employer does not initiate arbitration within the time allowed, "the amounts demanded by the plan sponsor . . . shall be due and owing on the schedule set forth by the plan sponsor." *Id.* § 1401(b)(1); *Robbins v. B&B Lines, Inc.* (*B&B Lines*), 830 F.2d 648, 649 (7th Cir. 1987). Finally, if an employer fails to make a payment and fails to cure its non-payment within sixty days, the sponsor may require immediate payment of the entire outstanding amount of the employer's withdrawal liability. *Id.* § 1399(c)(5).

### III. ANALYSIS

Central States maintains that C&V's arbitration demand was untimely, and that, as a consequence, C&V's withdrawal liability is now due and owing. Accordingly, Central States seeks: a stay of or injunction against the arbitration that C&V initiated (Count I); a declaratory judgment that the arbitration lacks jurisdiction because C&V failed to file its arbitration demand in a timely fashion (Count II); a judgment compelling the payment of all past-due and future withdrawal liability payments (Count III); and, as an alternative to Counts I through III in the event that the court finds that C&V timely filed its arbitration demand, a judgment requiring C&V to pay its interim payments according to the schedule sent to it by the Fund (Count IV).

In response to Central States' motion for summary judgment, C&V argues that Central States waived its right to contest the timeliness of C&V's arbitration demand. This court properly considers the timeliness of C&V's arbitration demand, *see Robbins v. Chipman Trucking*, 866 F.2d 900, 901 (7th Cir. 1988) (citing *B&B Lines*, 83 F.2d 648), and accordingly considers the parties' arguments in turn.

A. **Timeliness of C&V's Arbitration Demand**

The undisputed evidence summarized above establishes that C&V received the Fund's response to C&V's request for review of its withdrawal liability on January 23, 2009. Beginning on that date, C&V had sixty days to file its arbitration demand. 29 U.S.C. § 1401(a)(1). C&V filed its arbitration demand on March 25, 2009 which, the parties agree, is sixty-one days after C&V received the Fund's determination. Central States did not receive notice of C&V's arbitration demand until April 2, 2009, and then only from the AAA, not C&V.

In an earlier case, the Fund received an arbitration demand one day after the period for making the demand expired, and the AAA received the demand and payment still later. *Cent. States, Se. & Sw. Areas Pension Fund v. Ditello*, 974 F.2d 887, 892-93 (7th Cir. 1992), *not followed on other grounds in Cent. States, Se. & Sw. Areas Pension Fund v. White*, 258 F.3d 636, 641 (7th Cir. 2001) (not following dictum in *Ditello* regarding liability of employer's spouse for employer's withdrawal liability). In *Ditello*, the Seventh Circuit affirmed that, regardless of whether the relevant date of the employer's arbitration demand was Central States' receipt of the demand or the AAA's receipt, the demand was untimely, meriting summary judgment in favor of the Fund. *Id.* at 893.

Here, as in *Ditello*, regardless of whether the court considers C&V's submission of its arbitration demand, or the AAA's or Central States' receipt of the demand, C&V's demand came more than sixty days after it received Central States' determination on C&V's request for review. Therefore, C&V's arbitration demand was untimely.

**B.      Whether Central States Waived its Right to Object to Arbitration**

C&V does not contest the un-timeliness of its arbitration demand.[3] Rather, as C&V states in opposition to Central States' motion for summary judgment, "The sole question of law that needs to be resolved by this Court is whether Plaintiff [*sic*], through its actions, has waived any objection it could raise to the timeliness of C&V's filing of notice of arbitration." (Doc. 24 at 4.) Central States responds that C&V's basis for arguing waiver is legally flawed and, in any case, that Central States did not waive its objection to the timeliness of C&V's arbitration demand because it objected in writing to C&V's arbitration demand just seven days after first receiving the arbitration demand.

1.      Whether the Fund Failed to Object Promptly to the Timeliness of C&V's Initiation of Arbitration

C&V bases its waiver argument on 29 C.F.R. § 4221.3, which regulates the initiation of arbitration pursuant to the MPPAA. The provisions cited by the parties state as follows:

> (d) Contents of agreement or notice. If the employer initiates arbitration, it shall include in the notice of initiation a statement that it disputes the plan sponsor's determination of its withdrawal liability and is initiating arbitration. A copy of the demand for withdrawal liability and any request for reconsideration, and the response thereto, shall be attached to the notice. If a party other than an employer initiates arbitration, it shall include in the notice a statement that it is initiating arbitration and a brief

---

[3]      As noted in Section I.B above, C&V offers facts in its statement of additional facts that appear to contest the timeliness issue. C&V's facts on the issue of timeliness have been stricken for lack of evidentiary basis. Moreover, C&V advances no argument regarding timeliness, and indeed has waived such an argument by identifying the "sole question" for resolution as whether Central States' waived its timeliness argument.

9

> description of the questions on which arbitration is sought. If arbitration is initiated by agreement, the agreement shall include a brief description of the questions submitted to arbitration. In no case is compliance with formal rules of pleading required.
>
> (e) Effect of deficient agreement or notice. If a party fails to object promptly in writing to deficiencies in an initiation agreement or a notice of initiation of arbitration, it waives its right to object.

29 C.F.R. § 4221.3. Central States maintains that C&V misreads the regulation above and that it needed only to "object promptly in writing" to deficiencies in the *content* of C&V's notice of initiation of arbitration. Neither party submits any authority on point.

The court need not decide whether C&V's or Central States' interpretation is correct because, even if the regulation required the Fund to object promptly to C&V's notice of arbitration, the Fund did so in this case. C&V maintains that Central States failed to "object promptly" to the timeliness of C&V's arbitration demand because Central States did not file suit until thirty-nine days after receiving C&V's arbitration demand.

The regulation quoted above does not define "promptly." The parties do not cite any judicial interpretation of the term as used in this regulation, and the court's research has revealed no case on point. C&V proposes that "prompt" means within ten days, relying on the definition of prompt in another, non-MPPAA context in the Code of Federal Regulations. *See* 7 C.F.R. § 46.2(aa). Other regulations, also unrelated to the MPPAA, apply similar definitions. *See* 5 C.F.R. § 950.302(b) (defining "promptly" as "within 10 business days"); *id.* § 950.304(b) (same). The Seventh Circuit and the Supreme Court, in dicta and in contexts unrelated to the MPPAA, have noted that an action taken within ten days is taken promptly. *See Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 372 (U.S. 1977) (referring to notice to Title VII defendant within

ten days of filing of charge as "prompt notice"); *Bank of Cal., N.A. v. Arthur Andersen & Co.*, 709 F.2d 1174, 1177 (7th Cir. 1983). Other regulations define "promptly" more liberally. *See, e.g.*, 7 C.F.R. § 3.11(e) (defining promptly as "within 30 days"); 29 C.F.R. § 20.53(c) (same).

Even under C&V's ten-day proposed definition of "prompt," the uncontroverted evidence establishes that the Fund promptly submitted its objection to the timeliness of C&V's initiation of arbitration in this case. On April 9, 2009, seven days after receiving the arbitration notice, the Fund notified C&V and AAA in writing that C&V's initiation of arbitration was "invalid" because C&V "failed to initiate arbitration in a timely manner because the demand was received by the AAA after the applicable deadline . . . ." (Pls.' Reply Ex. A, Ex. 1.)[4] The timing of this written objection fits squarely within the definitions of "prompt" provided above. Moreover, there is no evidence of facts and circumstances suggesting that the Fund otherwise failed to act promptly. *See* Black's Law Dictionary 1214 (7th ed. 1999) (noting that the definition of "promptly" "depends largely on the facts in each case"). For example, there is no evidence that the Fund delayed in providing this written objection to C&V's initiation of arbitration, or that the arbitration had progressed in any way in the week between the Fund's receipt of notice of arbitration and its written objection to the timeliness of it. Based on the above definitions and uses of "promptly" and on the available record, the court concludes that the Fund objected promptly in writing to the timeliness of C&V's initiation of arbitration.

---

[4] Because Central States submitted this evidence for the first time in reply, the court granted C&V the opportunity to file any sur-reply it deemed necessary. (Doc. 27.) The deadline has expired without C&V filing any sur-reply.

2. Whether the Fund Waived Its Objection to the Timeliness of Arbitration by Participating in the Selection of an Arbitrator

The parties agree that the Fund participated in the selection of the arbitrator in this case. C&V argues that "in the arbitration context it has been held that participation in the selection of the arbitrator is sufficient to constitute a waiver of objection to the items of dispute submitted." (Doc. 24 at 5.) C&V's only support for this argument is New York case law. *See, e.g.*, *Microtran Co. v. Edelstein*, 30 A.D.2d 938, 939 (N.Y. App. Div. 1968).

C&V's argument fails to cite or address the standard applicable in this circuit to waiver of objections to arbitration. The Seventh Circuit has repeatedly stated that, when "a party clearly and explicitly reserves the right to object to arbitrability, his participation in the arbitration does not preclude him from challenging the arbitrator's authority in court." *AGCO Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000) (citing *Int'l Ass'n of Machinists & Aerospace Workers, Lodge No. 1777 v. Fansteel, Inc.*, 900 F.2d 1005, 1009 (7th Cir. 1990)); *Am. Int'l Specialty Lines Ins. Co. v. Elec. Data Sys. Corp.*, 347 F.3d 665, 667 (7th Cir. 2003) (finding that party who "challenged arbitrability at the outset" did not waive objection to arbitration). By contrast, a party that "voluntarily submit[s] to the arbitrator's authority" and raises an objection to the arbitrator's jurisdiction only after the arbitrator's award waives any such objection. *Envtl. Barrier Co., LLC v. Slurry Sys., Inc.*, 540 F.3d 598, 606 (7th Cir. 2008); *Jones Dairy Farm v. Local No. P-1236*, 760 F.2d 173, 175 (7th Cir. 1985). Thus, the question is not whether the Fund participated in the selection of an arbitrator and thereby waived any objection to the arbitrator's jurisdiction, but rather whether the Fund "clearly and explicitly reserve[d] the right to object to arbitrability . . . ." *AGCO Corp.*, 216 F.3d at 593.

In this case, the undisputed evidence reveals that the Fund raised its objection to the timeliness of the initiation of arbitration within one week of receiving notice of the arbitration and before any proceedings took place. Further, the Fund participated in the selection of the arbitrator "[w]ithout waiving the Fund's . . . objections and right to seek court intervention . . . ." (Pls.' Reply Ex. A, Ex. 1.) Thirty-nine days after the Fund received the notice of arbitration, and before any significant proceedings had taken place before the arbitrator, Central States filed this suit. Therefore, the Fund timely raised and explicitly reserved its objection to the arbitrator's authority, and C&V's waiver argument is rejected.

## IV. CONCLUSION

Central States did not waive its right to object to the timeliness of C&V's arbitration demand. C&V's arbitration demand was in fact untimely, as it has conceded. Therefore, the balance of C&V's withdrawal liability is now due and owing, either on the Fund's proposed schedule, 29 U.S.C. § 1401(b)(1), or at the Fund's election, immediately, *id.* § 1399(c)(5).

Thus, Central States' motion for summary judgment is granted with respect to Counts I, II, and III. Its motion for summary judgment is denied as moot with respect to Count IV, which seeks relief only in the event that the court finds C&V's arbitration demand timely.

The parties have not briefed issues related to the amount of C&V's withdrawal liability that is currently due and owing, and the court therefore declines to address any such issues at this stage.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: July 30, 2010